# CIRCUIT COURT OF ROCKINGHAM COUNTY

Norman L. Bradburn, Sr.

v.

Rockingham Memorial Hospital

April 17, 1998

Case No. (Law) 10636

BY JUDGE JOHN J. MCGRATH, JR.

In this medical malpractice action, Plaintiff has brought suit against Rockingham Memorial Hospital alleging that the negligence of its employees caused him to suffer a tripartite fracture of his hip on May 9, 1994, as the result of a fall from a hospital bed. It is the Plaintiff's contention that the staff of Rockingham Memorial Hospital had improperly provided for his safety and security when he was placed unrestrained in a bed after his physicians had allegedly ordered that bed restraints be used to prevent the Plaintiff from exiting his bed.

Counsel for the parties have completed most of the discovery in the case, and the matter now brought before the Court includes the relatively narrow issues presented by the discoverability of two separate classes of documents. First, the Plaintiff seeks certain Policies, Procedures, and Protocols of the Defendant which specifically relate to fall prevention, vest restraints, nursing rounds, and post-incident care of patients. The Plaintiff seeks a second class of documents which are generically referred to as to the Incident Reports or Accident Reports prepared immediately after the incident which gave rise to this cause of action.

The Defendant resists production of either of these two types of documents on the grounds that they are privileged under § 8.01-581.17 of the Code of Virginia, 1950, as amended. In addition, Defendant asserts that its Policies, Procedures, and Protocols manuals are not discoverable because they are irrelevant as a matter of law under the holding in *Pullen & McCoy v. Nickens*, 226 Va. 342 (1983).

An evidentiary hearing was held on Plaintiff's Motion to Compel Discovery Responses. At this hearing, the Defendant produced two witnesses and a number of exhibits in support of its contention that both classes of documents should be and are privileged under § 8.01-581.17 of the Code of Virginia. The first witness called by the Defendant was Mrs. Young, who is the Director of Quality Management for Rockingham Memorial Hospital and also is a member of the Safety and Risk Management Committee of the Hospital. She gave an overview description of how the quality control assessment process works at the hospital. Her testimony was essentially that all untoward incidents which might give rise to liability which occur within the hospital are required to be reported by staff on a form that is variously known as a "Pink Sheet," a QCCR, or a QCR. These are the various names used for Incident Reports which are prepared by one or more staff members who are witnesses to or are involved in an accident. After these Incident Reports are completed, they are either reviewed on an individual basis or they are aggregated for statistical tracking and analysis by the various inter-disciplinary committees of the hospital which have, as part of their function, the monitoring and promulgation of quality assurance practices.

Mrs. Young further testified that the Policies, Procedures, and Protocols of the hospital are developed by various working committees and work their way through the inter-disciplinary committees and the medical staff peer review committees and are eventually promulgated as Policies and Procedures by the Board of Directors or Directing Manager upon the recommendation of the Quality Assessment and Improvement Committee. According to Mrs. Young, the Procedures of the hospital are more detailed documents generated for use at the department level, which lay out the specific manner in which the generalized Policies are to be applied in day-to-day activities.

Dr. Danny A. Neal, who is the current Chairman of the Medical Executive Committee of Rockingham Memorial Hospital, testified at length on the importance of the quality assessment and review procedures utilized at Rockingham Memorial Hospital and more particularly as utilized by the Medical Staff. Dr. Neal's testimony was essentially that the various medical groups operating within the hospital and the hospital Board of Directors and management rely heavily upon the various quality assurance committees that have been established, and these committees, in turn, rely upon the unfettered access to information from employees and medical staff members. It was Dr. Neal's testimony that, in his judgment and experience, the materials which were generated by the staff were of better quality and more usable for quality control purposes when the staff and employees were assured that whatever

information they generated would be free from discovery by legal process and possible use in litigation against them or their employer. Although the record is not exactly clear on this issue, it appears that individual Incident Reports are not always examined in detail by the Medical Executive Committee, but they are frequently utilized by the lower echelon committees to examine trends and are a basis for statistical analysis to determine what areas require additional attention from a quality assurance perspective.

The statutory provisions involved in this case are set forth in §§ 8.01-581.16 and 8.01-581.17 of the Code of Virginia.

Section 8.01-581.17 provides that:

> The proceedings, minutes, records, and reports of any (i) medical staff committee, utilization review committee, or other committee as specified in § 8.01-581.16 ... together with all communications, both oral and written, originating in or provided to such committees or entities, are privileged communications which may not be disclosed or obtained by legal discovery proceedings unless a circuit court, after a hearing and for good cause arising from extraordinary circumstances being shown, orders the disclosure of such proceedings, minutes, records, reports, or communications. Nothing in this section shall be construed as providing any privilege to hospital medical records kept with respect to any patient in the ordinary course of business of operating a hospital nor to any facts or information contained in such records, nor shall this section preclude or affect discovery of or production of evidence relating to hospitalization or treatment of any patient in the ordinary course of hospitalization of such patient.

Section 8.01-581.16 provides that the "Committees" which are covered by the privilege of § 8.01-581.17 are "any committee, board, group, commission or other entity which functions primarily to review, evaluate, make recommendations on ... . (iv) the adequacy or quality of professional services ... ."

Since the two classes of documents at issue in this case raise somewhat different legal issues, they will be treated separately.

## I. Discoverability of Incident Reports

The QCRs, QCCRs, or "Pink Sheets" (which hereinafter will be referred to simply as "Incident Reports") are prepared by staff personnel whenever there is an untoward incident which occurs at the hospital. These Incident Reports are then forwarded to various quality assurance committees. The

testimony in this case was that such an Incident Report was prepared immediately after Mr. Bradburn had suffered his fall by one or more of the nurses who were attending on the ward when he was injured. No other accident or incident report was prepared by anyone employed by the hospital.

The Defendant's position is that all of these Incident Reports are clearly privileged under the provisions of § 8.01-581.17 because they are "communications ... originating in or provided to a committee, board, group, commission, or other entity which functions primarily to review, evaluate, or make recommendations on ... . (iv) the adequacy or quality of professional services ... ." The Defendant contends that these Incident Reports are an integral part of the overall quality assurance or quality assessment process that has been established within the hospital to assure high quality medical care. In essence, the Defendant argues that these Incident Reports are the raw material which is supplied to the various quality assurance committees to be reviewed and to be analyzed for the purposes of maintaining or improving the quality of medical care rendered at the hospital.

The Plaintiff's contention is that these Incident Reports are not part of the deliberative quality control process and are not within the scope of the privilege as intended by the legislature. The Plaintiff's position is that it was never the intention of the legislature to extend a quality assurance privilege to routine, factual reports which record the time, place, date, witnesses, and observations relating to a particular incident. The Plaintiff's position is that the privilege is meant to protect the give and take of the deliberative process and the self-searching review conducted by quality control committees.

There appear to be no appellate cases in Virginia clearly articulating the metes and bounds of the privilege set forth in § 8.01-581.17 when dealing with incident reports relating to accidents which occur in medical facilities. There has been a substantial number of cases decided at the Circuit Court level, and they are more or less evenly divided on the question of whether such incident reports are privileged within the meaning of § 8.01-581.17. Plaintiff points to a number of decisions which have held that incident reports such as the ones involved in this case, even when they are supplied directly and exclusively to quality assurance or quality control committees, are not covered by the privilege because they do not contain any of the normal deliberative processes which the legislature intended to protect in the statute. *See, e.g., Huffman v. Beverly Calif. Corp.*, 42 Va. Cir. 205 (Rockingham County, 1997) (McGrath, J.); *Messerley v. Avante Group, Inc.*, 42 Va. Cir. 26 (Rockingham County, 1966) (McGrath, J.); *Roadcap v. Beverley Enterprises, Inc.* (Rockingham County, 1996) (Hupp, J.); *Benedict v. Community Hosp. of*

*Roanoke Valley*, 10 Va. Cir. 430 (City of Roanoke, 1988) (Coulter, J.); *Johnson v. Roanoke Memorial Hosp.*, 9 Va. Cir. 196 (City of Roanoke, 1987) (Coulter, J.); and *Atkinson v. Thomas*, 9 Va. Cir. 21 (City of Virginia Beach, 1986) (Russo, J.).

The Defendant cites to a number of circuit court opinions which have held that incident reports such as the one involved here are covered by the quality assurance deliberative privilege set forth in § 8.01-581.17. *See, e.g., Jones v. Rezba* (City of Winchester, 1997) (Wetsel, J.); *Stevens v. Lemmie*, 40 Va. Cir. 499 (City of Petersburg, 1996) (Lemons, J.); *Adams v. Patterson* (City of Winchester, 1994) (Wetsel, J.); *Mangano v. Kavanaugh*, 30 Va. Cir. 66 (Loudoun County, 1993) (Horne, J.); *Houchens v. University of Va.*, 23 Va. Cir. 202 (City of Charlottesville, 1991) (Swett, J.); *Hedgepeth v. Jesudian*, 15 Va. Cir. 352 (City of Richmond, 1989) (Markow, J.); *Riordan v. Fairfax Hosp. System, Inc.*, 28 Va. Cir. 560 (Fairfax County, 1988) (McWeeny, J.); *Francis v. McEntee*, 10 Va. Cir. 126 (Henrico County, 1987) (Kulp, J.); *Peck v. Chippenham Hosp., Inc.* (Medical Malpractice Review Panel, City of Richmond, 1986) (Nance, J.).

After reviewing all of these decisions and the evidentiary record established in the hearing on the instant motion, this Court continues to believe that the position as set forth in *Huffman v. Beverly Calif. Corp.*, 42 Va. Cir. 205 (1997), and *Messerly v. Avante Group*, 42 Va. Cir. 26 (1996), is an accurate statement and interpretation of the applicable law. In the *Huffman* and *Messerly* opinions, this Court indicated that records such as these, which are standard incident reports that are filed for any accident occurring at a medical facility, are not shielded from discovery by the provisions of § 8.01-581.17 because they do not rise to the level as contemplated by the statute of being quality assurance deliberative documents. They are simply recitations of the accident that occurred, the witnesses who were present, and other objective facts that can be ascertained from the eyewitnesses to the incident. As such, they are much more akin to the ordinary hospital records, which are exempted from the reach of this privilege pursuant to the last sentence of § 8.01-581.17.

It is certainly clear that the legislature has determined as a matter of public policy in Virginia that many of the documents utilized in, by, and with quality assurance organizations within medical facilities are to be exempt from discovery (absent a showing of special need) in order to facilitate the free flow of information between staff personnel and quality assurance committees. Although that is a commendable objective and needs to be adhered to whenever the deliberative process is involved, it appears to be an

impermissible reading of the statute to extend this privilege to cover all factual reports or incident reports of accidents that happen at a hospital simply because they are sent to a quality assurance committee.

The basis of this Court's decision was set forth very well by Judge Coulter in his decision in *Benedict v. Community Hosp.*, 10 Va. Cir. 430 (1988), when he stated:

> The argument that all field work, the incident reports, the questions concerning falls that might proceed a peer review meeting should be free from discovery ... must yield to the more compelling mandate of the statute's last sentence. Otherwise, all documents could become privileged simply by the committee requiring their production or attaching them to the minutes. As stated in *Johnson*: "almost anything could come within such broad and limitless sweep."*Id.* at page 436.

Therefore, the Defendant, Rockingham Memorial Hospital, will be ordered to produce within ten days of this Order copies of all incident reports that have been requested by the Plaintiff.

## II. *Discoverability of the Defendant's Policies, Procedures, and Protocols*

The Plaintiff's position at this the discovery stage of the litigation is that he is entitled to obtain the policies, procedures, and protocols of Rockingham Memorial Hospital relating to fall prevention, vest restraints, nursing rounds, and post-incident care of patients involved in such incidents because (1) these policies, procedures, and protocols are not "the proceedings, minutes, records, and reports of a medical staff committee or utilization review committee or other committee specified in § 8.01-581.16" nor are they communications originating in or provided to such committees; and (2) the fact that such policies, procedures, and protocols may not be introduced into evidence under the Supreme Court's holding in *Pullen & McCoy v. Nickens*, 226 Va. 332 (1993), does not mean that such documents cannot be obtained in discovery pursuant to Rule 4:1(b)(1). The Plaintiff contends that such information may be "reasonably calculated to lead to the discovery of admissible evidence." In short, the Plaintiff takes the position that it is premature at this point to determine the admissibility into evidence of these documents and that discovery should be permitted.

The Defendant Hospital, on the other hand, argues vigorously that the policies, procedures, and protocols established by the hospital are the result of

the peer review process and thus are privileged as a written communication originating from such a committee under the provisions of § 8.01-581.17 of the Code of Virginia, and, in addition, are exempt from discovery because they are not likely to result in the discovery of admissible evidence because pursuant to § 8.01-581.20 of the Code of Virginia, the standard of care is established by statute, and under the holding of the Supreme Court in *Pullen v. Nickens, supra*, the private rules, regulations, and procedures established by a party are not admissible in determining whether or not the party has met the applicable standard of care.

As in the case of the decisional authority relating to incident reports, the circuit courts are fairly evenly split on the issue of whether policies, procedures, and protocols of medical care providers can be obtained in discovery. A number of courts have held that the privilege set forth in § 8.01-581.17 only applies to the deliberative processes by which peer review groups establish procedures and protocols and does not extend to the final product thereof and that the scope of discovery set forth in Rule 4:1(b)(1) is broad enough to permit Plaintiffs to obtain this material in discovery before reaching the issue of whether such materials may be introduced at trial. *See, e.g., Houchens v. University of Va.*, 23 Va. Cir. 202 (City of Charlottesville, 1991) (Swett, J.); *Curtis v. Fairfax Hosp. Systems, Inc.*, 21 Va. 275 (Fairfax County, 1990) (Annunziata, J.); *Hedgepeth v. Jesudian*, 12 Va. Cir. 221 (City of Richmond, 1988) (Markow, J.); *Johnson v. Roanoke Memorial Hosp.*, 9 Va. Cir. 196 (City of Roanoke, 1987) (Coulter, J.).

The courts which have denied discovery of policy, procedures, and protocol manuals of medical care providers have done so on the grounds that either: (1) they are privileged written communications originating from a peer review group covered by the provisions of § 8.01-581.17 of the Code of Virginia and/or (2) that the internal policies, procedures, and protocols established by a medical care provider are irrelevant to determining whether or not the defendant has violated the statutory mandated standard of care for medical care providers. *See, e.g., Adams v. Patterson* (City of Winchester, 1994) (Wetsel, J.); *Mangano v. Kavanaugh*, 30 Va. Cir. 66 (Loudoun County, 1993) (Horne, J.); *Riordan v. Fairfax Hosp. Systems, Inc.*, 28 Va. Cir. 560 (Fairfax County, 1988) (McWeeny, J.); *Leslie v. Alexander*, 14 Va. Cir. 127 (City of Alexandria, 1988) (Swersky, J.); *Francis v. McEntee*, 10 Va. Cir. 126 (Henrico County, 1987) (Kulp, J.); and *Peck v. Chippenham Hosp., Inc.* (Medical Malpractice Review Panel, City of Richmond, 1986) (Nance, J.).

On the issue of whether the policies, procedures, and protocol manuals of a medical care provider are privileged under § 8.01-581.17 of the Code of

Virginia, this Court believes that the rationale set forth by Judge Annunziata in *Curtis v. Fairfax Hosp. Systems, Inc.*, 21 Va. Cir. 275 (1990), and Judge Coulter in *Johnson v. Roanoke Memorial Hosp.*, 9 Va. Cir. 196 (1987), is the better reasoned analysis of the decided cases. Clearly, the internal dialogue and the give and take of the peer review process, which lead up to and are an integral part of developing the policies, procedures, and protocols of medical care providers are exempted from discovery in the absence of good cause shown. However, the actual product that is generated thereby, which are generally policy and procedure manuals that are intended to be followed by all of the hospital staff and attending physicians are not part of the deliberative process but are the final result thereof and do not share in the privilege conferred by the statute. Therefore, it is this Court's holding that the privilege granted by § 8.01-581.17 does not protect from discovery the final result of the peer review activity, that is the policies, procedures, and practices manuals that are ultimately promulgated by the health care providers and which are used to govern the operations of the hospital.

However, given the clearly-delineated statutory standard of care that is set forth in § 8.01-581.20 of the Code of Virginia and the still viable holding of the Supreme Court in *Pullen v. Nickens, supra*, it is extremely doubtful that there is any way in which the internal policies, procedures, and protocols of medical care providers could be admitted into evidence in this case. To permit such documents into evidence would clearly destroy any incentive of medical care providers to adopt internal operating procedures which adopted anything but the bare minimum standard. This is exactly the type of chilling effect that the holding in *Pullen v. Nickens, supra*, was meant to prevent. However, at the discovery stage of the litigation, it cannot be said with a certainty that these materials will not lead to the discovery of admissible evidence within the purview of Rule 4:1(b)(1) of the Rules of the Supreme Court.

Therefore, solely for the purposes of discovery, this Court holds that these materials are to be produced to the Plaintiff pursuant to the various discovery requests that have been filed in this case. The Court cautions that what is covered by this Opinion and Order are the final and operative policies, procedures, and protocols relating to the subject matter at hand and that this ruling does not extend to any internal documentation reflecting the deliberations of the committees or groups which led to the formulation of the final policies and procedures that were in place at the time of the accident. Therefore, the Defendant will be required to produce these materials to Plaintiff within ten days of this Order.