# CIRCUIT COURT OF FAIRFAX COUNTY

Stephen M. Levin

v.

WJLA-TV et al.

October 22, 1999

Case No. (Law) 175329

BY JUDGE LESLIE M. ALDEN

This matter came before the Court upon the Motions for Reconsideration of the denials of the Motions to Quash filed by INOVA Health Systems, Reston Hospital Center, Pentagon City Hospital, and Trigon Insurance Company ("health related organizations"). The issues under reconsideration are as follows:

(1) Whether the privilege attached to communications described in § 8.01-581.17 of the Virginia Code is applicable outside of the medical malpractice context and should be invoked in the current defamation action; and

(2) Whether WJLA has shown good cause arising from extraordinary circumstances so as to require the production of privileged communications pursuant to § 8.01-581.17.

For the reasons set forth herein, the Court finds that § 8.01-581.17 of the Virginia Code does not apply in the context of a tort action unrelated to a medical malpractice action, and therefore, the documents subpoenaed should be produced by the health related organizations in accordance with this Court's ruling of August 27, 1999.

58

## Factual Background

In this case, Plaintiff Dr. Stephen M. Levin has sued, among others, WJLA-TV Corporation ("WJLA"), for defamation, conspiracy, and trespass. Plaintiff's claims arise from WJLA's television broadcast of data concerning Plaintiff's treatment of certain patients and his use of what is claimed to be a controversial treatment involving the unusual use of pelvic examinations. In a six-count Motion for Judgment, Plaintiff seeks to recover unspecified damages, including treble damages, for damage to his reputation, *inter alia*.

In the course of litigation, WJLA sought subpoenas *duces tecum* which were served upon four health related organizations with which Plaintiff is doing or has done business: INOVA Health Systems, Trigon Insurance Company, Reston Hospital Center, and Pentagon City Hospital.

In its subpoenas *duces tecum*, WJLA seeks all documents: (1) that refer to any formal complaints against Plaintiff, (2) that describe patient referrals to Plaintiff for piriformis syndrome, (3) that reflect communications between the health related organizations and Plaintiff, (4) that describe or report Plaintiff's diagnosis of any patient for piriformis syndrome, (5) that detail any payments made by the health related organizations to Plaintiff, (6) including invoices and bills submitted to the health related organizations by or on behalf of Plaintiff, (7) including all contracts and agreements between Plaintiff and the health related organizations, (8) that refer or describe the health related organization's decision to remove Plaintiff from any referral list, and (9) that describe or report any disciplinary action taken against Plaintiff by any hospital, medical licensing board, or medical association, (10) that describe, record, or discuss the health related organization's decision to grant Plaintiff hospital privileges or other positions. At issue here are the materials which may have been generated during so-called "peer review proceedings."

Through this discovery, WJLA seeks to obtain information for use in defending the defamation claim by validating WJLA's statements about Plaintiff. In addition to supporting its defense to the claims, WJLA contends that a showing that Plaintiff's professional privileges were denied at area hospitals for reasons unrelated to WJLA broadcasts would temper damages for lost income, if awarded. Plaintiff and the health related organizations move to quash the subpoenas *duces tecum* on the basis that the information sought constitutes privileged communications pursuant to § 8.01-581.17 of the Virginia Code. Further, they argue that WJLA has not shown good cause arising from extraordinary circumstances so as to warrant the disclosure of such information.

*Analysis*

A. *Standard of Review and Argument*

The party asserting the protection of a privilege has the burden of establishing both the existence and applicability of the privilege. *Commonwealth v. Edwards*, 235 Va. 499, 509 (1988). Because evidentiary principles operate to exclude relevant evidence and block the fact-finding function, they should be narrowly construed. *Id.* In deciding whether the privilege asserted should be recognized, the Court must take into account the particular factual circumstances in which the issue arises and weigh the need for the truth against the importance of the relationship or policy sought to be protected. Finally, the Court must determine whether the recognition of the privilege will, in fact, protect that relationship in the factual setting of the case. *Krach-Naden v. Sauk Village*, 1999 WL 543190 (N.D. Ill. 1999).

Plaintiff relies upon a privilege set forth in § 8.01-581.17 which provides, in pertinent part:

> The proceedings, minutes, records, and reports of any (i) medical staff committee, utilizations review committee, or other committee … are privileged communications which may not be disclosed or obtained by legal discovery proceedings unless a circuit court, after a hearing and for good cause arising from extraordinary circumstances being shown, order the disclosure of such proceeding, minutes, records, reports, or communications.

Va. Code Ann. § 8.01-581.17 (Michie 1999).

This statute is embodied as a part of a legislative scheme regarding the judicial processing of medical malpractice cases in Virginia and is found squarely in Chapter 21.1 in Title 8.01 of the Medical Malpractice section of the Virginia Code. Plaintiff and the health related organizations argue that this section should apply here because it evinces the policy of the General Assembly to preclude the disclosure of information from medical peer review committees in order to foster candid discussion among the committee members. Even though the current action is a defamation case and not a case involving a medical malpractice claim, Plaintiff argues that the same policy considerations apply.

WJLA argues that § 8.01-581.17 is not applicable to Trigon because Trigon does not fall within the ambit of the statute. The resolution of this issue

may require a factual determination. In light of the ruling herein, the Court considers the question moot.

## B. *Applicability of § 8.01-581.17 in Non-malpractice Tort Actions*

After reviewing § 8.01-581.17 of the Virginia Code, the Court is not persuaded that this chapter is applicable outside of the context of medical malpractice actions. This chapter of the Virginia Code contains no suggestion, much less a direction, that it is meant to be applied in other contexts, and, in the absence of express legislative intention, the Court is unwilling to extend its application to other tort cases.

## C. *Recognition of the Privilege Is Not Appropriate in This Context*

Even if there may be other areas of the law in which such a privilege may be pertinent, the policy statement expressed in the cited code section is not relevant in the context of this case. The policy embodied in § 8.01-581.17 of the Virginia Code was designed to permit committee members to speak freely about their peers in an effort to provide purposeful review and evaluation of medical procedures and professionals. It appears also designed to prevent professional embarrassment to health care providers who are subjected to peer review and to promote vigorous debate and institutional analysis without fear by participants of reprisals against them by a disgruntled subject. The purpose of the privilege is obvious; it is intended to shield from discovery the comments and actions of those involved in the peer review process, as those persons generally are immune from civil liability for activity conducted in the performance of their peer review duties, as set forth in § 8.01-581.16.

However, none of these laudable policies is implicated in the factual context of this case, especially when WJLA enjoys no immunity for its conduct. Here, plaintiff seeks to recover money for damage to his professional reputation allegedly caused by WJLA's conduct completely unrelated to the peer review process. It would seem incongruous to insulate information about a doctor's professional conduct or reputation in defamation actions where the doctor has put his reputation at issue as a sword, only to later attempt to shield from discovery any negative peer information that clearly may relate to the same issue and to the defense to this claim. Surely, the General Assembly did not intend to impede a defense to a defamation action through the enactment of this legislation. By bringing this lawsuit, it seems clear that Plaintiff waived any privilege he might otherwise assert.

Moreover, the release of this information by the health related organizations does not encroach upon either the purpose of, or the policy considerations behind, the statute. The purpose of the statute is to curtail the production of information that is not relevant because the parties are afforded statutory immunity. Here, the Virginia Code does not afford any such immunity to WJLA, and this information is vital to the preparation of its defense to the suit. Further, the production of such information does not impinge upon the policy because it does not intrude upon the immunity provided to the health related organizations as Plaintiff may not maintain an action against the health related organizations based upon objections to the protected information. Pursuant to § 8.01-581.16 of the Virginia Code, Plaintiff can maintain an action against a peer review participant if it is alleged that the review actions were done maliciously. In that instance, good cause would likely be found under § 8.01-581.17 for discovery of the material.

The reliance of Plaintiff and the health related organizations on *White v. Cassady*, 29 Va. Cir. 45 (1992), to support their position is inapposite. In *White*, the Court held that the privilege afforded by § 8.01-581.17 did apply in a defamation suit between a plaintiff doctor and an outside consultant who negatively reviewed the plaintiff's work conduct in the peer review process. Although the Court concluded that the *defendant* there could assert the privilege with regard to his communications about the plaintiff in the course of the peer review, the Court determined that the defendant's statements made about the peer review, but outside of the peer review process, were not similarly protected and were discoverable. Thus, the Court determined that the policy considerations embodied in § 8.01-581.17 do not apply in all circumstances, and the Court recognized that the information generated during the peer review process is not privileged in every situation. Further, *White* is factually distinguishable because it involved parties directly involved in the peer review; here, WJLA had no involvement with the generation of the original information.

Accordingly, after consideration of the particular factual circumstances of this case, the Court concludes that the need for the truth outweighs the importance of the policy sought to be protected in the statute and that recognition of the privilege in this case does not serve to further the policies embodied in the statute.

## D. *WJLA Has Shown Good Cause to Warrant Disclosure*

Assuming, arguendo, that § 8.01-581.17 of the Virginia Code is applicable to the current case, the Court finds that WJLA has shown good

cause arising from extraordinary circumstances such as to warrant the disclosure of the information sought. As stated, Plaintiff has put his reputation at issue in this case, and WJLA must defend against a defamation action for which Plaintiff has claimed unspecified and unlimited damages as a result of WJLA's alleged damage to his reputation. Reston Hospital Center and Pentagon City Hospital's use of *United States v. Mettatal*, 1997 WL 599296 (W.D. Va. 1997), cited by Plaintiff and the health related organizations, is not controlling. While the Court in that case found that good cause existed where a criminal defendant sought to obtain the records to aid in his defense, nothing in that case purports to limit the circumstances in which good cause might be found.

Although Plaintiff must establish that WJLA's allegedly slanderous statements were false, WJLA must establish the truth of the statements as a defense. Further, as the defamatory words alleged are actionable *per se* because they imputed to Plaintiff an unfitness to perform his duties of employment and/or prejudiced Plaintiff in his profession, damages are presumed. As the damages are presumed, the burden of proof shifts to WJLA to rebut this presumption. Especially in light of these burdens, WJLA is entitled to pursue all facts that are relevant to its defense of this action. The information sought by the subpoenas *duces tecum* is clearly relevant to the issue of the truth of the alleged defamatory statements, as well as the mitigation of damages suffered by Plaintiff for loss of reputation income. As the bar to disclosure in the statute is not absolute, the Court concludes that to the extent it is required to do so, WJLA has shown good cause arising from extraordinary circumstances, and the documents should be produced by the health related organizations.

## Conclusion

For the reasons stated herein, the Court finds that the documents requested by the subpoenas *duces tecum* must be produced. Accordingly, the Motions to Reconsider filed by the health related organizations are hereby denied.