Present:  Carrico, C.J., Compton,[1] Lacy, Hassell, Keenan,
Koontz, and Kinser, JJ.

VIRGINIA ELECTRIC AND POWER COMPANY

v.  Record No. 990489    OPINION BY JUSTICE ELIZABETH B. LACY
                                        March 3, 2000
WESTMORELAND-LG&E PARTNERS

                FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                          Theodore J. Markow, Judge

     The dispositive issue in this appeal is whether the trial
court correctly limited parol evidence to the intent of the
parties when executing a 1989 contract.

     In 1988, Virginia Electric and Power Company (Virginia
Power) issued a request for proposals seeking independent
power producers who would supply electric power to Virginia
Power.  One responding company was Beckley Cogeneration
Company (Beckley), a Delaware limited partnership.  On January
24, 1989, Virginia Power and Beckley entered into a contract
under which Beckley agreed to build a waste-coal burning plant
in West Virginia and sell the electricity produced from that
plant to Virginia Power pursuant to the terms of the contract.
Beckley, however, abandoned the project and the partnership
was dissolved.

     Westmoreland Energy, Inc., an affiliate of one of
Beckley's former general partners, along with another company,

────────────────
     [1] Justice Compton participated in the hearing and decision
of this case prior to the effective date of his retirement on

sought to continue the project by building the power plant in North Carolina, rather than in West Virginia, and using pulverized coal rather than waste coal to produce the electricity. A general partnership, Westmoreland-LG&E Partners (WLP), was created to undertake the revised project.[2] A contract between Virginia Power and WLP was executed in March 1990, reflecting these changes in the project. Another contract between WLP and Virginia Power was executed in November 1991, following WLP's request for amendments to the 1990 contract. The 1991 contract remains in effect.

In 1994, WLP filed a motion for judgment against Virginia Power, alleging breach of the 1991 contract and seeking recovery of payments allegedly due WLP under that contract. The trial court held that the contract provisions in issue were unambiguous and entered summary judgment in favor of Virginia Power. On appeal, this Court determined that the contract provisions were ambiguous and, therefore, the trial court erred in refusing to allow parol evidence to ascertain the intent of the parties. The matter was remanded for further proceedings. Westmoreland-LG&E Partners v. Virginia Power, 254 Va. 1, 486 S.E.2d 289 (1997)(Westmoreland I).

---

February 2, 2000.
    [2] The partnership consisted of Westmoreland-Roanoke Valley, L.P. and Hadson Valley, L.P.

Prior to trial on remand, WLP filed a motion seeking a determination that the parties' intent regarding the ambiguous provisions be determined as of the execution of the 1989 contract. WLP argued that this determination was required by the decision in Westmoreland I. The trial court agreed and excluded parol evidence offered by Virginia Power concerning the parties' intent at the time of the 1990 and 1991 contracts.

Following a hearing, the trial court adopted the interpretation of the disputed provisions advanced by WLP and entered judgment in favor of WLP for approximately $19 million plus interest. We awarded Virginia Power an appeal. Because we conclude that the decision in Westmoreland I did not limit consideration of the parties' intent regarding the disputed sections to the intent existing in 1989, the judgment of the trial court will be reversed and the case remanded for further proceedings.

The trial court's holding that the 1989 contract was the operative document for purposes of the parties' intent was based on the use of the 1989 contract in Westmoreland I to determine whether the provisions in issue were ambiguous. The trial court concluded that the opinion in Westmoreland I "seems to say that what we're looking to determine is the

3

intent of the parties in the negotiation and execution of the 1989 document."

The issue in Westmoreland I, however, was whether the trial court's holding that the provisions at issue were unambiguous was correct. In reviewing that decision, it made no difference whether the 1989, 1990, or 1991 contract was considered, because the language of the relevant provisions was the same in all three contracts. Westmoreland I, 254 Va. at 4 n. 1, 486 S.E.2d at 291 n. 1. The reference to the 1989 contract, therefore, was not material to the question of ambiguity under consideration in Westmoreland I.

Furthermore, in considering another issue raised in that appeal, Westmoreland I referred to "§ 1.20," for the definition of "Forced Outage Day," which is a reference to the 1991 contract. Westmoreland I, 254 Va. at 5-6, 486 S.E.2d at 291-92. In the 1989 contract, that definition was contained in § 1.21.

More importantly, nothing in Westmoreland I directed or limited consideration on remand to the 1989 contract. The order remanding the case likewise did not restrict the proceedings on remand to the 1989 contract. As explained in Nassif v. Board of Supervisors of Fairfax County, 231 Va. 472, 481, 345 S.E.2d 520, 525 (1986), "[w]hen we limit issues on remand we do so with words of limitation or restriction." In

4

the absence of such limitations or restriction, the trial court was not limited to consideration of the 1989 contract on remand.

WLP asserts, however, that the trial court's conclusion was correct for other reasons. WLP asserts that, because it was a "constant" to all the contracts through affiliates and related partnerships and through its representative Charles Brown, consideration of the 1989 contract formation was proper. WLP also argues that the 1991 contract was merely a reenactment and amendment of the prior contracts. Therefore, WLP concludes, because the terms of the disputed provisions remained unchanged throughout, parol evidence was properly restricted to the parties' intent as to the meaning of those terms in 1989 when they were initially adopted.

The trial court did not address these arguments because, as we have indicated, its decision was based solely on the restriction it believed was mandated by Westmoreland I. Furthermore, although Virginia Power disagrees with WLP's assertions and maintains that the 1991 contract was a novation of the prior contracts and not a reenactment of them, it does not seek to restrict parol evidence of the parties' intent to the 1991 contract. The error of the trial court, according to Virginia Power, was that it did not allow admission of

5

evidence relevant to the parties' intent in 1991 in addition to, not as a substitute for, evidence of that intent in 1989.

WLP sought recovery for a breach of the 1991 contract. Even though the disputed provisions in the 1991 contract have language identical to that in the 1989 contract, identical provisions in successive contracts may or may not carry the same meaning in each instance. See Galloway Corp. v. S.B. Ballard Constr., 250 Va. 493, 502-06, 464 S.E.2d 349, 355-57 (1995). This is particularly true under the circumstances of this case, where the provisions themselves are ambiguous and the project at issue changed in material respects. Therefore, we conclude that the trial court erroneously limited parol evidence to the parties' intent at the time of the 1989 contact.

WLP also asserts that Virginia Power should be estopped from seeking to introduce evidence of the intent of the 1991 contract. WLP's position in this regard is that, in Westmoreland I, Virginia Power relied on events surrounding the execution of the 1989 contract in arguing that evidence of trade custom and usage was inadmissible to inform the meaning of the provisions at issue. Therefore, according to WLP, in this proceeding Virginia Power should not be allowed to seek admission of evidence relating to any contract other than the 1989 contract.

6

WLP's argument overlooks the fact that in Westmoreland I, Virginia Power contended that the contract provisions were unambiguous and under those circumstances any meaning based on trade custom and usage attached in 1989 and remained unchanged. Virginia Power, however, did not prevail in its contention that the provisions were unambiguous and on remand was required to treat the provisions as ambiguous and thus subject to clarification by parol evidence of the parties' intent. Virginia Power's assertion on remand that evidence of the parties intent in 1991, as well as in 1989, should be admitted does not conflict with its earlier position that any unambiguous meaning of the provisions based on trade, custom, or usage arose in 1989. Therefore, we reject WLP's estoppel arguments.

In light of our conclusion that the trial court erred in limiting parol evidence of intent to the parties' intent in executing the 1989 contract, we will remand the case for further proceedings consistent with this opinion. Accordingly, we need not address the assignments of error and cross-error regarding Virginia Power's proffer of evidence and the trial court's interpretation of the disputed provisions. However, we will address Virginia Power's assertion that the trial court erred in holding that a draft letter was protected by the attorney-client privilege and, therefore, was not

7

subject to discovery by Virginia Power, because the issue is likely to arise on remand.

The letter in question was prepared in December 1990, by James S. Brown, then Chief Financial Officer of Westmoreland Energy, to memorialize a conversation he had with John Mable of Virginia Power regarding Mable's understanding of Virginia Power's liability for capacity payments on days determined to be forced outage days.[3]  At that time, Brown and his counterpart at Hadson Power Systems, Lawrence Sawyer Folks, were preparing a financial prospectus of the cogeneration project for use in obtaining financing.  Prior to sending the letter to Mable, Brown sent the letter to Folks.  Folks apparently sent the letter to Charles Schwenck, in-house counsel to Hadson Power Systems.[4]  Brown testified that, when he wrote the letter, he intended to seek legal advice both on its content and whether it should be sent.  Schwenck conferred with Brown regarding the letter and it was discussed at a meeting of Brown, Folks, Schwenck, and Charles Brown, an official with Westmoreland Energy.  The draft letter was never sent to Mable.

_____

[3] The draft letter was reviewed by the trial court <u>in camera</u> and submitted under seal to this Court.
[4] The trial court stated in its opinion letter that Folks sent the letter to Schwenck, although the record also supports

The attorney-client privilege does not attach to a document merely because a client delivers it to his attorney. However, the privilege does attach to a document prepared with the purpose of being sent to counsel for legal advice. Robertson v. Commonwealth, 181 Va. 520, 539-40, 25 S.E.2d 352, 360 (1943). The party seeking to assert the attorney-client privilege bears the burden of persuasion on the issue. Commonwealth v. Edwards, 235 Va. 499, 509, 370 S.E.2d 296, 301 (1988).

Although Brown testified that he drafted the letter with the intent of getting legal advice, Virginia Power asserts that the Brown letter was not entitled to the attorney-client privilege because it does not qualify as a document prepared for the purpose of obtaining legal advice. Virginia Power apparently considers the privilege applicable only to a document which by its own terms conveys a request for legal advice. Such an application of the privilege requirement is too narrow.

The privilege attaches to a document even if the document does not contain, or is not accompanied by, a written request for legal advice, if the proponent of the privilege sustains its burden of proof to show that the document was prepared

---

the conclusion that Brown sent a copy of the letter to the attorney.

with the intention of securing legal advice on its contents. Robertson, 181 Va. at 540, 25 S.E.2d at 360. As we have said, the record in this case contains the testimony of Brown that when he drafted the letter he intended to get legal advice on its content and on whether he should deliver it to Mable.

Virginia Power also argues that any privilege that may have attached to the draft letter was waived when the draft letter was sent to Folks and to in-house counsel for Hadson Power Systems. We disagree.

Communications between officers and employees of the same entity relayed to corporate counsel for the purpose of obtaining legal advice are entitled to the attorney-client privilege. Owens-Corning Fiberglas Corp. v. Watson, 243 Va. 128, 141, 413 S.E.2d 630, 638 (1992)(citing Upjohn Co. v. United States, 449 U.S. 383 (1981)). Under the circumstances of this case, the relationship of Folks, Brown, and Schwenck is tantamount to that of employees of the same entity for purposes of the application of the privilege. WLP is the entity asserting the privilege. Folks and Brown are employed by parent corporations of the WLP partnership.[5] Both Folks and Brown sought to secure legal advice regarding the letter. The

---

[5] Folks' direct employer, Hadson Power Systems, owns Hadson Power, Inc., which in turn owns Hadson Roanoke Valley L.P. Brown's direct employer, Westmoreland Energy, Inc., owns

Brown letter was prepared in connection with the business of WLP and, as the trial court acknowledged, "the respective companies were partners on the project sharing a common concern."

Finally, Virginia Power argues that it is only seeking factual material, the contents of the letter, not the advice counsel gave to Brown and Folks concerning the letter. However, the substance of the letter in this case constitutes the very matter for which legal advice was sought. There is no "factual material" apart from the substance of the letter itself.

The record in this case does not support Virginia Power's assertion that the draft letter was "created, exchanged or discussed" outside of the attorney-client relationship. Rather, the record shows that the letter was created, exchanged and discussed within the perimeters of WLP, the party seeking to assert the privilege, with the expectation that legal advice would be secured prior to finalization and transmission of the letter. Considering this record, we conclude that the trial court did not err in its conclusion that WLP met its burden of producing evidence to show that the draft letter was entitled to the protection of the attorney-

90% of Westmoreland-Roanoke Valley, L.P., which along with Hadson Roanoke Valley, L.P., comprise WLP.

11

client privilege and not subject to discovery by Virginia Power.

For the reasons stated, we will reverse the judgment of the trial court and remand the case for further proceedings consistent with this opinion.

<u>Reversed and remanded.</u>