## CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Christine Eppard

v.

Gwendolyn Kelly

Case No. (Law) 02-166

BY JUDGE EDWARD L. HOGSHIRE

May 9, 2003

In reviewing the briefs and exhibits filed in response to Plaintiff's Motion to Compel and Defendants claims of privilege, I have made a preliminary findings as will be set forth below. The Court has also determined that there is no basis for the asserting that litigation in this case was reasonably anticipated before July 2001.

Upon review of the record, it appears that the privilege logs of the Defendant fail to meet the requirements of Rule 4:1(b)(6) of the Supreme Court of Virginia, which states:

> When a party withholds information otherwise discoverable under these rules by claiming that it is privileged … the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself

privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

Under the requirements of this rule, items 1 and 2 of the Piedmont Liability Trust privilege log and items 1, 2, and 3 of the University of Virginia privilege log are not described with sufficient specificity. It is apparent from the record that these items contain numerous discrete pieces of information, gathered by various individuals at various dates for various purposes. Neither privilege log provides specific information with regard to any of these discrete pieces of information. Absent such information, Plaintiff cannot adequately assess the applicability of the privileges claimed for those items. Therefore, Defendant has not met her burden under Rule 4:1(b)(6) with respect to those items.

On the record as it stands, the Court would be inclined to grant Plaintiff's Motion to Compel with respect to these items. However, the Court will give the Defendant the opportunity to amend the privilege logs before rendering a final decision on Plaintiff's motion, but only if such amendments are tendered to Plaintiff's counsel on or before 4:00 p.m. on May 26th. If such are not acceptable to Plaintiff, counsel should contact Ms. Young. in my office to schedule an immediate hearing.

Finally, if not already accomplished, Defendant must provide forthwith to counsel for Plaintiff, all of the medical records of the Plaintiff kept in the normal course of treatment and hospitalization, regardless of where housed or whether or not in the possession of any committee or counsel.

August 26, 2003

This letter opinion addresses the issue of whether documents held by the Piedmont Liability Trust and the University of Virginia Medical Center shall be granted privileged status in this medical malpractice case. Defendant has asserted privileges stemming from the attorney-client relationship, documents produced in expectation of litigation, and statutory protection found in Virginia Code § 8.01-581.17. For the reasons stated below, the Court grants in part and denies in part the Plaintiff's Motion to Compel.

*Procedural History*

This Court's letter opinion of May 9, 2003, stated that there was no basis for reasonably anticipating litigation in this case before July 2001, filing of the

Notice of Claim by Plaintiff. Additionally, the privilege logs of the Defendant failed to meet the specificity requirements of Rule 4:1(b)(6) of the Supreme Court of Virginia, but leave was granted to amend the logs to comply with the Rule. The parties were encouraged to confer in an attempt to resolve by negotiation the remaining issues regarding discovery and privilege assertion, but these negotiations proved unsuccessful.

*Statement of Facts*

A. *The Incident*

The pleadings allege that on August 28, 2000, Dr. Gwendolyn Kelly performed a laparoscopic bilateral salpingo-oophorectomy operation on Christine Eppard at the University of Virginia's Medical Center ("University Hospital") on an outpatient basis. Plaintiff returned to the hospital on August 29, 2000, with complaints of pain in her abdomen. The emergency room staff diagnosed Plaintiff as suffering from normal postoperative pain. Plaintiff once again returned to the hospital with more severe abdominal pain on August 29, 2000, at around 9:20 p.m. This time Plaintiff was brought to the emergency room by an ambulance. After a lengthy period of observation, Dr. Irvin, assisted by the Defendant, operated on the Plaintiff in the early morning of August 31, 2000. A rent in the Plaintiff's distal ileum and enteral contents were subsequently discovered in her abdominal cavity. Dr. William Irvin resected the damaged portion of Plaintiff's bowel, then disconnected, removed and cleaned the bowel before reattaching it. Finally, Dr. Irvin performed an ileostomy.

B. *PLT in Relation to the University of Virginia Medical Center*

Piedmont Liability Trust ("PLT") and the University Hospital function as alter egos in many senses, yet PLT asserts that it is independent. PLT was created by the Health Services Foundation ("HSF") in 1989. (Rebecca West Dep. at 9.) PLT exists to provide medical malpractice insurance for the practitioners at the University Hospital and the HSF, but PLT does not provide medical malpractice insurance to other practitioners. (Lizabeth Sanderford Dep. at 5-6; West Dep. at 14-15.) PLT's staff is integrated in the medical review system at the University Hospital and throughout the process of investigation and decision-making on healthcare improvement issues.

Judy Fortineux, PLT's Risk Manager, has access to both the University Hospital and the PLT patient databases. (Fortineux Dep. at 14-15; Sanderford Dep. at 44.) Furthermore, Fortineux sits on what has been termed the "informal committee" as its primary investigator and is also a member of the Risk Management Committee ("RMC"). Rebecca West, PLT's Managing Director, sits on the RMC and Health Care Evaluation Committee ("HCEC") and apparently receives many of the documents produced and provided to this "informal committee." (Abraham Segres Dep. at 69-72; PLT Documents 1-2 reviewed *in camera*.) Fortineux's reports and information are in turn available to PLT legal counsel through the PLT database. (Sanderford Dep. at 10, 39-42, 44; West Dep. at 84-86.) Alternately, both West and Fortineux are physically present at the PLT's office. No "Chinese Walls" have been inserted in the process, so there is no functional separation between the healthcare improvement system and the liability investigatory process.

In 1991, the University Hospital's Medical Center Policy No. 132 retitled "Incident/Occurrence Reports" as "Quality Reports." (Pl. Ex. 18.) Quality Reports are defined as having been "generated to initiate quality review of Health System processes, practices, and procedures for quality assurance purposes." (Pl. Ex. 18.) Such reports are those either requested by or sent to the Service Center Quality Committee and to the Health Care Evaluation Committee. (Pl. Ex. 18.)

## C. Overlapping "Healthcare Improvement" Committee Structures

The record reflects that in mid-September 2000, Plaintiff expressed concerns over her medical bills with Patient Representative Sally Booker. (Booker Dep. at 36-38, 70.) Booker then informed members of the informal committee or group ("informal committee") of the Plaintiff's concerns. This discussion with the patient representative initiated both the healthcare evaluation process as well as the risk assessment analysis conducted by groups and committees within the University Hospital organization. (Booker Dep. at 39, 52.)

The "informal committee" is, according to the Defendant, involved primarily with healthcare improvement activities. (Rectors and Visitors of the University of Virginia: Memorandum in Response to the Plaintiff's Opening Brief and Plaintiff's Brief in Response, at 10-15.) However, this "informal committee" is poorly delineated. This "informal committee" appears on no formal organization chart. One of the five decision-making members,

Fortineux, is an employee of PLT and the group's lead investigator. (Abraham Segres Dep. at 76-77.) In addition, three other members are part of the Risk Management Office at the Hospital. A fifth member, identified by Abraham Segres as Christine Matt, does not appear to be an active member of the group. (Segres Dep. at 75; PLT document 1-2 reviewed *in camera*.) Although West, PLT's Managing Director, is not listed as a member of the "informal committee," she was included on the original e-mail lists for much of the information sent to the "informal committee" and Fortineux regularly consulted with her during the investigation. (PLT document 1-2 reviewed *in camera*.) West, unlike many of the members of the "informal committee," received the initial report from the Patient Representative. (PLT document 1-2 and University Hospital Document 1 reviewed *in camera*.) This "informal committee" theoretically reports to the Risk Management Committee (Segres Dep. at 138-40), but keeps no records or minutes and does not chronicle attendance. From the list of those persons claiming membership, it would appear the "informal committee's" focus is risk management and insurance, not healthcare improvement *per se*.

The RMC is formally constituted within the Hospital committee structure with thirteen members, eight of whom appear to be from a risk management background, a legal background, or PLT staff by profession. (Segres Dep. at 69-70, 148-52.) The RMC reports to the HCEC. (Segres Dep. at 148-49.)

The HCEC has eleven members, six of whom are doctors and only two of whom, Segres and West, are risk management specialists. (Segres Dep. at 71-72.) This committee purports to review medical decisions for measures that could be undertaken to avoid future incidents involving non-optimal medical outcomes. (Segres Dep. at 151-52.)

## Issue Presented

Whether the documents submitted for review *in camera* are excluded from discovery by virtue of their status as attorney work product, documents compiled in anticipation of litigation, or documents qualifying under Va. Code § 8.01-581.17.

## Analysis

The primary goal of Va. Code § 8.01-581.17 is to facilitate the free exchange of information for undertaking remedial measures to improve the

general level of healthcare in hospitals in the Commonwealth. *Levin v. WJLA-TV*, 51 Va. Cir. 57, 60 (Fairfax County 1999). Accordingly, extending privileged status to documents and investigations gathered for analyzing departures from standard practices and outcomes was expected to foster an open and honest dialogue and to create an opportunity for hospitals to address areas of concern regarding their provision of healthcare services. *Francis v. McEntee*, 10 Va. Cir. 126, 128 (Henrico County 1987); *Johnson v. Roanoke Memorial Hospitals, Inc.*, 9 Va. Cir. 196, 198 (Roanoke City 1987); *Mangano v. Kavanaugh*, 30 Va. Cir. 66, 68 (Loudoun County 1993).

When asserting privilege, the Defendant has the burden of proof in demonstrating that the privilege properly applies to the document. The proponent of the privilege has the burden of establishing the existence of the attorney-client relationship, the privileged nature of the communications, and non-waiver of the privilege. *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982); *Commonwealth v. Edwards*, 235 Va. 499, 509, 370 S.E.2d 296, 301 (1988); *Virginia Electric & Power Co. v. Westmoreland-LG&E Partners*, 259 Va. 319, 325, 526 S.E.2d 750, 755 (2000); *Anderson v. Anderson*, 29 Va. App. 673, 681-82, 514 S.E.2d 369, 374 (1999); *RML Corp. v. Assurance Co. of Am.*, 60 Va. Cir. 269, 274 (Norfolk 2002). The proponent of the privilege also has the burden of proof in establishing the work product in anticipation of litigation privilege. *S. W. Heischman, Inc. v. Reliance Ins. Co.*, 30 Va. Cir. 235, 243 (Albemarle County 1993).

In the case at bar, two theoretically distinct parties, PLT and the University Hospital, are acting in concert in claiming the statutory protections against discovery embodied in Va. Code § 8.01-581.17. This dual entity situation was addressed in *Messerley, Adm'x v. Avante Group*, 42 Va. Cir. 26 (Rockingham County 1996). The court in *Messerley* decided that the nursing home holding company was not covered by the privilege of Va. Code § 8.01-581.17 because it did not provide healthcare. *Id.* at 27. Avante Group was identified as a holding company that owned stock in corporations; it provided management overview only, not day-to-day operational supervision. The *Messerley* court found that the statutory privilege did "not extend to reports containing simple facts concerning accidents and the witnesses thereto, and [that] any statements made by the witnesses are not covered by the privilege and must be disclosed and produced to the opposing party." *Id.* at 28. Despite the fact that all of the reports had been sent to a Quality Assurance Committee of the nursing home and potentially to the holding company, these reports were deemed excluded from the statutory privilege. *Id.* at 26-27.

Defendant asserts that Va. Code § 8.01-581.17(B) covers PLT by reference to those entities contained in Va. Code § 8.01-581.16. However, Va. Code § 8.01-581.16 essentially states that every member of a committee is covered as long as it "functions primarily to review, evaluate, or make recommendations" of healthcare improvement (Va. Code §§ 8.01-581.16(i) to 8.01-581.16(v), and 8.01-581.16(vii)) or billing issues (Va. Code § 8.01-581.16(vi)). Fortineux is not involved in billing issues and specifically had no such role in the Plaintiff's case. (Fortineux Dep. at 51-54.) Her role was as an agent or employee of the insurer. As an *insurance company* not involved in the quality of healthcare or the direct cost to a patient of *services*, PLT is unable to raise the Va. Code § 8.01-581.17 privilege.

Peer review is part of the Commonwealth's desire to improve the general state of healthcare. *HCA Health Servs. v. Levin*, 260 Va. 215, 221, 530 S.E.2d 417, 420 (2000). However, peer review can be read widely to include not only another practitioner's report on medical procedure, but also the analysis by a committee of a procedure or action that led to a non-desirable healthcare outcome. To encourage peer review, the legislature deemed it necessary to maintain the confidentiality of the process. *Id.* at 221. However, "peer review" should not be used to shield from disclosure medical records not generated initially for peer review objectives. "Although that is a commendable objective and needs to be adhered to whenever the deliberative process is involved, it appears to be an impermissible reading of the statute to extend the privilege to cover all factual reports or incident reports of accidents that happen at a hospital simply because they are sent to a quality assurance committee." *Bradburn v. Rockingham Memorial Hospital*, 45 Va. Cir. 356, 360-61 (Rockingham County 1998). The privilege issue in the case at bar hinges on what should be considered records kept in the normal course of treatment.

Hospitals immediately respond to medical accidents by thoroughly investigating the incident in detail, usually in the form of an incident report. *Id.* at 358-59. Incident reports have been found discoverable in several circuits within the Commonwealth. *Benedict v. Community Hospital*, 10 Va. Cir. 430, (Medical Malpractice Review Panel 1988); *Messerley*, 42 Va. Cir. 26; *Bradburn*, 45 Va. Cir. 356; *Huffman v. Beverly Cal. Corp.*, 42 Va. Cir. 205 (Rockingham County 1997); *Hurdle, Adm'r v. Oceana Urgent Care, etc.*, 49 Va. Cir. 328 (City of Norfolk 1999); *Atkinson v. Thomas and Virginia Beach General Hospital*, 9 Va. Cir. 21 (Va. Beach 1986). "In reality, when an untoward event has occurred to a patient in a hospital causing injury, hospital

officials, keenly conscious of the litigious nature of the American character, will undertake an investigation to accumulate facts so as to be fully informed if a claim is ultimately made." *Benedict*, 10 Va. Cir. at 437-38. Thus, there may be incentives to immediately commingle the creation of an incident report with healthcare evaluation by using Va. Code § 8.01-581.17 to avoid discovery of damaging information or documents.

The investigation into liability conducted by PLT and the University Hospital is interwoven with the general healthcare improvement process. PLT claims that its liability investigations are protected at inception. The Defendant asserts that PLT's Fortineux is providing information for healthcare improvement purposes as part of the "informal committee's" review of incidents forwarded to it by the Patient Representative's office. If this was for use only by the hospital for healthcare improvement or "peer review," such actions would fall within the ambit of the statute and the legislature's intent. However, since the University's Risk Management staff as well as the PLT staff assigned to the healthcare committees have become part of the healthcare improvement process, the system appears to be designed to wrap large segments of the patient treatment review investigation under a blanket of privilege. Furthermore, the information gathered by the process is simultaneously made available to the legal staffs of both the PLT and the University Hospital.

The "informal committee," based on its composition, does not appear to have anything but a risk management or litigation focus. The RMC, although composed of some medical professionals, is disproportionately oriented by its members' professional affiliations within the University Hospital towards risk management and insurance protection. Medical professionals, on the other hand, dominate the HCEC. Since healthcare improvement is a medical goal, it requires the input and analysis of medical professionals to determine how best to improve patient healthcare. Only the HCEC meets the definitional requirements as being primarily engaged in improving the quality of healthcare foreseen by Va. Code § 8.01-581.17. Commingling committee staff does not extend HCEC's status as a healthcare improvement committee to the other two committees.

*Findings and Conclusions*

Based on the foregoing analysis and on an *in camera*[1] review of the contested documents, the Court has determined as follows:

1. University Privilege Document 1: Case Notes.
Discovery Allowed.
Privilege Asserted: Va. Code § 8.01-581.17.

As this document is in essence an incident report with medical chart review material in a database format and was prepared for the RMC with a focus on adjusting the Plaintiff's bill, it should not receive any privilege conveyed under statute.

2. University Document 4: Letter from Ketchel to Lilly.
Discovery Allowed.
Privilege Asserted: Information developed in anticipation of litigation.

This document was produced on October 30, 2000, before the July 2001 cutoff date for litigation expectation set by the Court and does not qualify under the privilege asserted.

3. PLT Documents 1 and 2: Database Notes.
Discovery Allowed.
Privilege Asserted: Va. Code § 8.01-581.17 and information and material prepared in anticipation of litigation.

Some of these documents purport to involve medical discussions, but it simply appears to list investigative facts unearthed by the various parties involved in the correspondence. Most of the work also appears to have been conducted by and for PLT alone. The statutory privilege assertion fails. The use of the privilege for information and materials prepared in anticipation of litigation is only binding for materials produced after July of 2001.

4. University Document 2: Tami Atkinson one page Document.
Discovery Denied.

---

[1] The Court declines to address the issue of waiver as the discovery issues here under review do not require a decision as to whether the privilege found in Va. Code § 8.01-581.17 has been waived by the commingling of University Hospital and PLT documents and staff.

Privilege Asserted: Va. Code § 8.01-581.17 and information developed in anticipation of litigation.

Va. Code § 8.01-581.17 does not apply because the document is focused on the pending claim filed by Eppard, but the material was generated for counsel and, clearly, in anticipation of litigation after July 2001.

5. University Document 3: Initial Investigating Report.
Discovery Denied.
Privilege Asserted: Va. Code § 8.01-581.17 and information developed in anticipation of litigation.

This document does not deal with healthcare but only with the potential liability of the University Hospital and the Commonwealth. It was created after July 2001, so it is not time-barred from the privilege and was clearly created in anticipation of litigation. Since the RMC would qualify as an "agent or consultant" under Rule 4:1(b)(3), the document is not discoverable absent a showing of substantial need.

6. University Document 5: Atkinson-Counsel e-mail thread (one page).
Discovery Denied.
Privilege Asserted: attorney-client and information developed in anticipation of litigation.

This document is an e-mail stream between Tami Atkinson and attorneys from Crews & Hancock, the legal representative of Tami Atkinson's employer, and is protected by the attorney-client privilege.

7. University Document 6: Segres-Hodsdon Memoranda (two one-page documents).
Discovery Denied.
Privilege Asserted: attorney-client.

This document is privileged as it clearly involves an attorney-client communication regarding a claim.

8. PLT Document 3: Further Investigative Notes.
Discovery Denied.
Privilege Asserted: work product for documents prepared in anticipation of litigation and attorney-client privilege.

These documents appear to commence with a notation from August 3, 2001, and therefore were created when litigation was contemplated by the parties as per this Court's prior ruling.

9. PLT Document 4: PLT Board of Director's Minutes for September 30, 1992.
Discovery Denied.
Privilege Asserted: attorney-client.

Generally, the minutes from a Board of Director's meeting are protected, particularly when the minutes comprise legal advice from corporate counsel.

The Court requests that Mr. Parker prepare the appropriate order granting in part and denying in part the motion to compel discovery of documents contained in the University of Virginia Medical Center's and the Piedmont Liability Trust's respective privilege logs, noting the exceptions of counsel with the Court's ruling.